27 N.J. Super. 243 (1953)
99 A.2d 323
JOHN E. CULLUM, PETITIONER-APPELLANT,
v.
THE BOARD OF EDUCATION OF THE TOWNSHIP OF NORTH BERGEN IN THE COUNTY OF HUDSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 20, 1953.
Decided September 8, 1953.
*244 Before Judges McGEEHAN, PROCTOR and LLOYD.
*245 Mr. Morton Isaacs argued the cause for appellant.
Mr. Isadore Glauberman argued the cause for respondent.
The opinion of the court was delivered by LLOYD, J.S.C. (temporarily assigned).
The issue is the validity of the appointment of petitioner-appellant as superintendent of the schools of the Township of North Bergen for the term of five years.
On January 13, 1952 the office of superintendent of schools for the Township of North Bergen became vacant by reason of the death of the incumbent Madden. The defendant-respondent consisted of five members, who appointed a secretary. The board consisted of Stephen H. Magnus, president; Edith Beck, vice-president; John Halligan, George Eichler and Edward H. Marck. James J. Goodman was secretary.
On January 16, 1952 all the members of the board, with the exception of Eichler, went to luncheon. In addition to said members, Goodman and two school principals accompanied them. At said luncheon the four board members present, after some discussion, agreed that they should observe a 30-day period of mourning after which time the board would begin the task of selecting a new superintendent; and George Eichler, the absent member, was later informed of this agreement and acquiesced therein. Applicants for the office, other than petitioner-appellant, who asked board members about filing applications were told not to file an application until the 30-day period of mourning had expired.
About January 20, 1952 Marck and Halligan contacted Magnus and Eichler for the purpose of discussing the appointment of a superintendent, but they refused because of the mourning period.
Marck had been a member of the board about nine months; his term would expire on January 31, 1952, and a few days after January 16 it became known that he was not being reappointed by the appointing power, the mayor of the Township of North Bergen.
On January 23, 1952 one Harry Buesser, a North Bergen Township commissioner, asked Secretary Goodman "to have *246 a letter prepared calling a special meeting for next Monday night," but Goodman informed him the request could not be complied with because under the resolution adopted by the board of education the secretary could call a special meeting only if ordered by the president or if he received a request in writing from three members of the board.
On January 24, 1952 there is evidence that Buesser met Mrs. Beck and asked her whether she would sign the notice of such meeting. Upon her telling him she would not do so, he stated: "O.K., if you don't sign, your husband will be fired from his job in the morning."
On the afternoon of January 28, 1952 Marck went to the office of the defendant-respondent and examined the records and resolution concerning the requirements for calling a special meeting. As he was leaving Goodman entered the office, said "Hello," and Marck nodded. Up to this time no request was made of Goodman to call a special meeting. A little while thereafter Goodman, because of illness, went to Atlantic City, where he remained until about February 2, 1952.
On January 29, 1952 Halligan, Marck and Beck signed two notices which were served on the other members of the board, Magnus and Eichler, one by registered mail and the other personally. The same day they served a notice on Goodman by leaving it at his office as he was out of town, directing him to call a meeting of the board. Said notices called for a meeting of the board to be held on January 31, 1952 at 8:00 P.M., for the purpose of considering the appointment of a superintendent of schools and for such other business as might come before the meeting.
The meeting was held at said time, Marck, Halligan and Beck being present. These three passed a resolution, which had been prepared and signed previously, appointing petitioner-appellant superintendent of schools of the Township of North Bergen for the term of five years, commencing immediately.
The next day, February 1, 1952, the new board of education, at its regular organization meeting, repudiated said *247 resolution passed at the so-called special meeting of January 31, 1952.
An appeal from the action of the new board was taken to the Commissioner of Education, who held that the meeting of January 31 was not legally called and, therefore, the appointment of petitioner-appellant was invalid. An appeal from this ruling was then taken to the State Board of Education, which board affirmed the decision of the Commissioner of Education.
Rule 136 of the State Board of Education reads as follows:
"Board of Education  Call of Special Meetings. In every school district of the State, it shall be the duty of the Secretary or District Clerk of the Board of Education to call a special meeting of the Board whenever he is requested by the President of the Board to do so or whenever there shall be presented to such Secretary or District Clerk a petition signed by a majority of the whole number of members of the Board of Education requesting the calling of such a special meeting." 
and the board, defendant-respondent, adopted a resolution on February 1, 1951, as follows:
"Resolved, That Special Meetings shall be called on not less than twenty-four hours notice by the Secretary, in writing, upon the order of the President or on the written request of three members of the Board.
All notices of Special Meetings shall state the object for which such meetings are called."
Special meetings are usually called in cases of emergency or, as the word indicates, for special or specific reasons. The notices given by the three members of the board did not comply with the board's own resolution. The special meeting held pursuant to such notice was illegal. Apgar v. Van Syckel, 46 N.J.L. 492 (Sup. Ct. 1884). Further, it will be noted the meeting was called for the purpose of considering the appointment of a superintendent of schools. At said meeting there was no "considering," which has been defined  "to deliberate about and ponder over" (Black's Law Dictionary (4th ed.)). The resolution appointing petitioner-appellant *248 had been prepared and signed before the meeting was called and the adoption of the resolution was merely a matter of form.
The members of the board of education of a municipality are public officers holding positions of public trust. They stand in a fiduciary relationship to the people whom they have been elected or appointed to serve,
"As fiduciaries and trustees of the public weal they are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity." Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474 (1952).
The appointment of superintendent of schools is of the utmost importance as "he shall have a seat in the board and the right to speak on all educational matters, but not the right to vote." R.S. 18:6-37. The appointment of the superintendent by the board was not only in pursuance of an illegal notice but exceeded the purpose stated in said notice. There could have been no valid appointment under the notice given.
The decision of the State Board of Education is affirmed.